IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DELMAR LAKE,<br><br>    Defendant. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ON MOTION TO SUPPRESS<br><br>Case No. 2:05CR443DAK |

   This matter is before the court on Defendant Delmar Lake's Motion to Suppress. The court held an evidentiary hearing on the motion on December 13, 2006. The parties then engaged in plea negotiations and briefed other motions. The court held a status conference on this case on January 7, 2008, at which Defendant indicated that he wished to proceed with the motion to suppress. The parties briefed the motion and the court held closing arguments on January 30, 2008. Defendant was present at each of the hearings and represented by Mary C. Corporan. Plaintiff was represented by Lana Taylor at the evidentiary hearing and R. Don Brown at the closing arguments. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties as well as the law and facts relating to these motions. Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order on Defendants' motions to suppress.

## FINDINGS OF FACT

On July 5, 2005, Officer Andrew Jackson of the Salt Lake Police Department assisted Sergeant Finlay of the Salt Lake Police Department in a traffic stop of a blue sports utility vehicle, which was described as an older model Blazer or Bronco.  The initial traffic stop was conducted at the direction of Detective Tyler Boelter of the Salt Lake Police Department's narcotics team.  Sergeant Finlay, who was Officer Jack's supervisor at the time, was contacted by the narcotics squad to assist in a case of some stolen motorcycles.

Several officers from the Salt Lake City Police Department, including Detective Teerlink, Sergeant Finlay, and Officer Jackson, responded to the area of 1000 West, where the narcotics officers were holding surveillance of the location.  The narcotics surveillance officers requested that an older model blue SUV be stopped based on their observation of the SUV recently leaving the building where the surveillance was being conducted.  Officers indicated that the driver of the SUV matched Defendant Lake's physical characteristics.  The narcotics officer specifically identified Lake as a potential suspect in the investigation of the stolen motorcycles.

After the narcotics officers observed the older SUV with a person they believed to be Lake driving, they contacted the Salt Lake City Police Department and asked that the vehicle be stopped.  The narcotics officer relayed a description of the driver that they said matched the description of Lake.  Officer Jackson stated that the narcotics team conducting the surveillance ran the license plate number of the SUV.  The team then informed the Salt Lake Police Department, including Officer Jackson, that the SUV was registered to "Reliable Properties" and/or "Reliable Property Management," and that the SUV had no insurance.

Upon arrival at the requested area, Officer Jackson was notified that the defendant, Delmar Lake, was leaving in a vehicle that was not insured.  Officer Jackson was also notified that there were two outstanding warrants for Lake's arrest.  Officer Jackson initiated the traffic stop.  Jackson asked the driver for his driver's license, registration and insurance information, confirming that the driver was Lake.  Jackson asked Lake to step out of the SUV and placed him immediately into custody.  Jackson placed Lake in handcuffs, brought him to the back of the SUV, and ordered Lake to sit on the curb.

Jackson spoke to the narcotics detectives and was instructed to give Lake his Miranda rights and to see if he was willing to be interviewed by the detectives involved in the stolen motorcycle investigation.  Lake stated that he understood his rights and was willing to speak to officers.  Detective Boelter arrived right after Jackson gave Lake his *Miranda* rights.  Jackson told Boelter that Lake would be willing to talk to him, and Jackson turned Lake over to Boelter. Boelter testified that the nature of his interview with Lake was in relation to the stolen motorcycle investigation.  After Boelter interviewed Lake, Lake was transported to the County Jail.

## CONCLUSIONS OF LAW

The government does not contest that Defendant has standing to challenge the propriety of the stop and his detention. Defendant argues that Officer Jackson did not have the appropriate reasonable and articulable suspicion to initiate the stop.  A traffic stop must be based upon probable cause.  The necessary probable cause must generally be of two types:  (1) probable cause to believe the vehicle contains either a person who is subject to arrest or evidence of a crime, or (2) probable cause to believe the driver committed a traffic offense.  *Terry v. Ohio*, 392

U.S. 1, 18-19 (1968).  In determining whether a traffic stop is appropriate, a court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  *United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir. 2005).

In this case, Officer Jackson had probable cause to conduct the traffic stop based on the information he was given by other officers involved in the stop.  The officers relayed information to Jackson regarding the lack of insurance and Lake's outstanding warrants.  This information provided a sufficient basis to initiate a traffic stop.  Defendant cites to no case law stating that one officer cannot rely on information provided to him by another officer.  And, this court finds that Jackson's reliance on the information he received from his fellow officers was reasonable.

Defendant next argues that Lake's consent to be interviewed was elicited as a result of Jackson's exploitation of prior illegal conduct.  The court, however, has concluded that Jackson's initial stop of Lake's SUV was legally justified.  Accordingly, there is no basis for finding that the consent was tainted by prior misconduct.

Defendant further contends that Lake's incriminating statements to Detective Boelter were not voluntary and were taken in violation of his Fifth Amendment privilege against self-incrimination, his Sixth Amendment right to counsel, and principles of due process.

In this case, Defendant was in custody, he was given his *Miranda* rights, and he indicated to Officer Jackson that he understood his rights.  There is no evidence in this case that Defendant was threatened or otherwise improperly influenced.  Nor is there any evidence that Defendant did not understand his rights.  The court concludes that Defendant knowingly and intelligently

waived his *Miranda* rights.  Accordingly, there is no basis for suppressing the statements Defendant made to Detective Boelter.

### CONCLUSION

Based on the above reasoning, Defendant's Motion to Suppress is DENIED.

DATED this 19th day of February, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge